**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Moraine Properties, LLC,**

       *Plaintiff,*

v.                                                             **Case No. 3:07-cv-229
Judge Thomas M. Rose**

**Ethyl Corporation,**

       *Defendant.*

---

**ENTRY AND ORDER GRANTING IN PART DEFENDANT ETHYL CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION.** (DOC. 6). **PLAINTIFF'S THIRD AND FOURTH CLAIMS ARE DISMISSED WITHOUT PREJUDICE.**

---

This matter is before the Court for decision on Defendant Ethyl Corporation's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim and Lack of Subject Matter Jurisdiction. Doc. 6. The case arises from alleged actions of predecessors in interest to Defendant that have resulted in possible damage to the environment.

According to the amended complaint, Ethyl Corporation merged with the Oxford Paper Company, which had operated the Miami Paper Mill in West Carrollton, Ohio beginning in 1960. The paper mill had a de-inking facility to recycle used paper, including carbonless copy paper. The operation generated sludge sediment that Ethyl disposed of through a wastewater treatment system that had a primary wastewater clarifier, two secondary clarifiers, an aeration basin lagoon, and aeration spray towers. This process allegedly created a paper sludge that needed disposal.

From approximately 1963 through 1970, Ethyl is alleged to have transported the remaining paper sludge to a nearby farm property it had purchased that was adjacent to a rendering plant it operated. The paper sludge contained polychlorinated biphenyls, (known as PCB's), along with other chemicals, including calcium carbonate, aluminum sulfate, titanium, corn starch, dyes, biocides, fibers, volatile organic compounds, metal and cyanide. This area was closed to further disposal of paper sludge in 1977. Doc. 5 at ¶ 19.

By July 2001, Fraser Paper had acquired the rendering plant and farm property that was used for disposal. In July 2001, Fraser Paper began investigating, sampling, cleaning and removing PCB-contaminated soils, sediments and waste-water effluent from the waste-water treatment system and other affected areas of the paper mill at a cost in excess of $3.6 million. Doc. 5 at ¶ 20-21. This culminated on February 4, 2003 with the submission of an Engineering Evaluation/Cost Analysis plan to the Ohio EPA for review. Doc. 5 at ¶ 26. June 2003 saw the City of West Carrollton present an assessment of the paper mill site to the Ohio EPA as part of a request for funding from the Clean Ohio Fund.

On December 24, 2004, Fraser Paper conveyed its claims against Defendant to Plaintiff. Then, on April 24, 2004, Fraser Paper conveyed the paper mill site to a company called Team Industrial, LLC. This was followed by a June 25, 2004 conveyance from Fraser Paper to Plaintiff of the rendering plant disposal area itself.

On August 3, 2004, the Ohio EPA granted permission to Plaintiff to conduct additional response activities at the rendering plant disposal area, including an investigation of the limits of paper sludge placement and determination of geotechnical properties. Doc. 5 at ¶ 31. On September 2, 2004, Plaintiff submitted a preliminary interim remedial design to the Ohio EPA. Doc. 5 at ¶ 32.

In October 2004, someone, the complaint does not state who, capped and covered the portion of the disposal area confined to the former farm property.

On June 1, 2007, Plaintiff sent a letter informing Defendant, with copies to civil enforcement authorities, of its intent to file suit. On June 28, 2007, Plaintiffs filed a complaint in this Court asserting a claim under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act, ("CERCLA") 42 U.S.C. § 9607(a), to recover costs allegedly incurred by Plaintiff and for declaratory judgment for future damages pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 42 U.S.C. § 9613(g)(2). Doc. 1. Plaintiff also stated Ohio statutory and common law causes of action, including: cost recovery under Ohio Revised Code § 3746, negligence *per se,* and indemnity and contribution. On September 13, 2007, Plaintiff filed an amended complaint that added one claim under § 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and under Section 505 of the Clean Water Act ("CWA"), as amended 33 U.S.C. § 1365. Doc. 5.

Now Defendant has requested that the Court dismiss Plaintiff's action, asserting that Plaintiff has not complied with the notice requirements that are a required procedural step prior to the filing of a citizen suit under RCRA or CWA. As to the CERCLA action, Defendant asserts that Plaintiff has not incurred "necessary costs of response...consistent with the national contingency plan" as required by 42 U.S.C. § 9607(a)(4)(B). Defendant points out that the only quantified costs of response that have been incurred were incurred by Fraser Paper, not Plaintiff, and that Fraser Paper's assignment of its cause of action to Plaintiff is insufficient for purposes of 42 U.S.C. § 9607(a)(4)(B). Finally, Defendant requests that the Court dismiss the declaratory judgment claim, if all underlying federal claims are dismissed.

## II. Standards of Review

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S. Ct. 609, 614 (1972). Although the Court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125-26 n.5, 95 S. Ct. 1524, 1531 n.5 (1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, (1957). See also *McLain v. Real Estate Bd.*, 444 U.S. 232, 246, 100 S. Ct. 502, 511 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir. 1971), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately

prevail. *Scheuer*, 416 U.S. at 236, 94 S. Ct. at 1686; *McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District*, 577 F.2d 1339, 1345 (6th Cir. 1978). Rule 8(a)(2) Federal Rules of Civil Procedure, requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See *Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858. The Court will grant a motion for dismissal under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See generally *Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir. 1978); *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir. 1970).

These standards do not apply as beneficially to Plaintiffs in matters concerning the sufficiency of pleadings asserting a jurisdictional basis. "The established rule is that a plaintiff, suing in a federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459, 46 S. Ct. 338, 339 (1926). Allegations which are the essence of jurisdiction are essential and can neither be overlooked nor supplied by inference, *Dodrill v. New York Central Railroad Company*, 253 F. Supp. 564, 567 (D. Ohio 1966), yet amendments to defective allegations of jurisdiction are broadly permitted in both trial and appellate courts so as to avoid dismissals on technical grounds. *Miller v. Davis*, 507 F.2d

308 (6th Cir. 1974); 28 U.S.C. § 1653. In reviewing a Rule 12(b)(1) motion, the plaintiff has the burden of proving jurisdiction to survive the motion and the Court has the power to resolve factual disputes. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

### III. Analysis

As to the CERCLA claim, Defendant asserts that Plaintiff has not incurred "necessary costs of response...consistent with the national contingency plan" as required by 42 U.S.C. § 9607(a)(4)(B). Next, Defendant requests that the Court dismiss Plaintiff's RCRA and CWA claims for failing to comply with the notice requirements that are a required procedural step prior to the filing such an action. Finally, Defendant requests that the Court dismiss the declaratory judgment claim, if all underlying federal claims are dismissed.

#### A. CERCLA

CERCLA was "designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S. Ct. 1251, 1254 (1996). In order to achieve that purpose, Congress expressly provides for the recovery of cleanup costs in CERCLA. *Id.* at 1255. Towards that end, section 107 of the statute (42 U.S.C. § 9607) provides a private right of action for the recovery of such costs in certain circumstances. *Jones v. Inmont Corp.*, 584 F. Supp. 1425, 1429 (S.D. Ohio 1984); *McGregor v. Industrial Excess Landfill, Inc.*, 709 F. Supp. 1401, 1409-10 (N.D. Ohio 1987). A typical § 107 action involves a landowner forced to cleanup hazardous materials that a third party has spilled onto its property or that migrated there from adjacent lands. *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1240 (7th Cir. 1997) (citing *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir. 1994)).

In order to make out a prima facie case under § 107, a plaintiff must establish four elements: (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the National Contingency Plan; and (4) the defendant is in one of four categories of potentially responsible parties. *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006).

Defendant asks the Court to dismiss Plaintiff's CERCLA claim based on the third element, arguing that any costs incurred to date have not been incurred by Plaintiff. In so doing, Defendant chooses to focus on the use of a single word utilized in a different context in two different cases. As Defendant points out, the Supreme Court stated that CERCLA § "permits cost recovery by a private party that has *itself* incurred cleanup costs." *Untied States v. Atlantic Research Corp.*, 551 U.S. –, 127 U.S. 2331, 2338 (2007)(emphasis added in Defendant's memorandum). The Sixth Circuit recognized that the Supreme Court had "noted that a § 107(a) action may lie where a party has itself "incurred" cleanup costs...." *ITT Indust., Inc. v. BorgWarner, Inc.*, 506 F.3d 452 (6th Cir. 2007). Neither of these cases, however, analyzed whether a party that had a incurred cleanup costs could assign its § 107(a) claim to another party. These cases instead focus on the interplay of CERCLA §§ 107(a) and 113(f), attempting to clarify which of these two avenues different categories of Plaintiffs must pursue. Defendant makes no attempt to apply the holdings of these cases to the complaint.

Indeed, in *ITT Industries*, the Sixth Circuit held, in light of *Atlantic Research*, that a company succeeding another party in interest may bring a CERCLA action. See *ITT Industries, Inc., v. BorgWarner, Inc.*, 506 F.3d 452, 454-55, 458 (6th Cir. 2007). This Court perceives no

reason why the result should be any different when a company, such as Plaintiff in the instant case, succeeds another in interest by means of an assignment. Common sense dictates that § 107(a) is the appropriate vehicle for a party that, as an assignee, "stands in the shoes" of the true plaintiff in a § 107(a) claim. *Stevens v. Northwestern Nat. Cas. Co. of Milwaukee, Wis.*, 305 F.2d 513, 514 (6th Cir. 1962). Therefore, the Court will deny Defendants' request that the Court dismiss Plaintiff's CERCLA claim.

**B.     RCRA & CWA Claims**

The notice provisions of the CWA and RCRA are similar to each other, and serve the same Congressional purpose: "to 'giv[e] agencies and alleged violators a 60-day non-adversarial period to achieve compliance with [relevant environmental] regulations.'" *Brown v. Lust*, 487 F. Supp. 2d 910, 913 (N.D. Ohio 2007) (quoting *Hallstrom v. Tillamook County*, 493 U.S. 20, 32, 110 S. Ct. 304 (1989)). The RCRA notice provision states in relevant part that:

> No action may be commenced under paragraph (a)(1) of this section-
>
> (1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order....

42 U.S.C. § 6972(b)(1).

Similarly, CWA § 1365(b)(1)(A) states that no action may be commenced "prior to sixty days after the plaintiff has given notice of the alleged violations." 33 U.S.C. § 1365(b)(1)(A). The Sixth Circuit has noted that "[the statutory notice requirement under § 1365 is] a jurisdictional requirement to maintaining a cause of action under the [CWA]." *Bd. of Trs. Of Painesville Township v. City of Painesville, Ohio*, 200 F.3d 396, 400 (6th Cir. 1999).

Furthermore, federal regulations have formally stated what constitutes sufficient notice. A plaintiff's CWA notice must include:

> [S]ufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The Requirements for a RCRA notice are similar. See 40 C.F.R. § 254.2(a)(1). The reasons such detail has been required is two-fold:

> first, such specific notice will allow government agencies to evaluate fully and adequately the violations alleged, and thereby to determine accurately their appropriate level of involvement in the matter; second, such specific notice will allow the recipient an opportunity to cure the violations before suit is brought, which may obviate the need for a costly lawsuit.

*Frilling v. Village of Anna*, 924 F. Supp. 821, 834 (S.D.Ohio 1996) (Rice, J.).

In the instant case, Plaintiff notified Defendant that:

> The Oxford Paper Company("Oxford Paper") assumed operation of the Miami Paper Mill in or around 1960. NewMarket, formerly known as Ethyl Corporation, merged with the Oxford Paper in approximately 1967. NewMarket's former Oxford paper operated the paper mill in West Carrollton, Ohio with a de-inking facility to recycle used paper, including carbonless copy paper. A portion of the residual fibers (Paper Sludge) from recycled carbonless copy paper from this period contained PCBs and were deposited in an area known as "the rendering plant" in the City of Moraine ("Site"). The Paper Sludge has and continues to enter an adjacent stream that flows into the Great Miami River. Besides PCBs, the Paper Sludge may contain the following contaminants including, but not limited to: calcium carbonate, aluminum sulfate, titanium, corn starch, dyer, biocides, fibers, volatile organic compounds, metals and cyanide.
>
> From August 2001 to present, Claimant and its assignors have fenced in the Site, informed all relevant governmental

>agencies, posted warning signs, and retained environmental
>consultants to study and design remedial measures for Ohio EPA's
>approval.

Docs. 5-2 and 5-3.

In the instant case, Plaintiff has identified to Defendant several entities that were involved in operating the paper sludge disposal area, and when those entities began operating them. It is not specific, however, in stating when the sludge was deposited there, and uses the passive voice in asserting "A portion of the residual fibers (Paper Sludge) from recycled carbonless copy paper from this period contained PCBs and were deposited in an area known as "the rendering plant" in the City of Moraine[,]" leaving Defendant to guess who might have done this and when. Such notice is insufficient. See *Frilling v. Honda of America Mfg., Inc.*, 1996 WL 1619348, 6 (S.D. Ohio 1996) (Rice, C.J.) (holding assertions that one violation occurred on a "nearly daily" basis and that other violations occurred on a "continuous" or "intermittent" basis; and assertions that still other violations occurred some specific number of times (ranging from one time to 220 times) over a timeframe of roughly five years" insufficient without specifying the time frames when such violations were occurring.). See also *California Sportfishing Protection Alliance v. City of West Sacramento*, 905 F. Supp. 792, 799 (E.D. Cal. 1995) (holding that the phrase "for the previous five years on hundreds of occasions" did not provide sufficient notice because "the date or dates of the violation must be stated with some specificity ... at the least plaintiff should give a range as to date that is reasonably limited"); *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Center, Inc.*, 891 F.Supp. 152, 154 (S.D.N.Y. 1995) (requiring the plaintiff "to specify at the very least a discrete, specific time-frame" of the alleged violations).

Plaintiff would have this Court follow the lead of the Second and Third Circuits, which believe "that the sixty-day notice provisions should be applied flexibly to avoid hindrance of citizen suits through excessive formalism." *Fishel v. Westinghouse Elec. Corp.*, 617 F. Supp. 1531, 1536 (C.D. Pa. 1985) (citing *Pymatuning Watershed Citizens for a Hygienic Environment v. Eaton*, 644 F.2d 995, 996 (3d Cir. 1981); *Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d 231, 243 (3d Cir. 1980); *Friends of the Earth v. Carey*, 535 F.2d 165, 175 (2d Cir. 1976). This is because "citizen[s] are not to be treated as nuisances or troublemakers but rather as welcome participants in the vindication of environmental interests." *Friends of the Earth*, 535 F.2d at 172. While this viewpoint serves a laudable purpose, it creates tension with the jurisdictional nature of the notice requirement and this Court's limited jurisdiction.[1]

Because Plaintiff has failed to provide Defendant the detail required by 40 C.F.R. § 135.3(a), and 254.3(a), Plaintiff's CWA and RCRA claims will be dismissed without prejudice. Because Plaintiff's CERCLA claim has survived Defendant's challenge, Defendant's motion to dismiss Plaintiff's declaratory judgement claim is moot.

## IV. Conclusion

Because Plaintiff has been assigned the cause of action of a party that is alleged to have incurred response costs, Defendant's motion to dismiss Plaintiff's CERCLA claim is **DENIED**. Because Plaintiff has failed to provide Defendant the detail required by 40 C.F.R. § 135.3(a), and 254.3(a), Plaintiff's CWA and RCRA claims will be dismissed without prejudice to refiling,

---

[1] Plaintiffs also cite to the Court *Brewer v. Ravan*, 680 F. Supp. 1176 (M.D. Tenn. 1988), which follows the Third Circuit, and *Hackensack Riverkeeper, Inc. v. Delaware Ostego Corp.*, 450 F. Supp. 2d 467, 481 (D.N.J. 2006), which is factually distinct, in that the notice at issue specifically stated the defendant was in violation of "42 U.S.C. § 6945(a)" and that gave greater precision with regard to the timeframe of the violations.

should sufficient notice be served and the statutory waiting period fulfilled. Because Plaintiff's CERCLA claim has survived Defendant's challenge, Defendant's motion to dismiss Plaintiff's declaratory judgement claim is moot. Therefore, Plaintiff's Third and Fourth Claims are **DISMISSED WITHOUT PREJUDICE TO REFILING**. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim and Lack of Subject Matter Jurisdiction, Doc. 6, is **DENIED** in all other regards.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 27, 2008.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE